[Cite as *State v. Krichbaum*, 2026-Ohio-3086.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
LICKING COUNTY, OHIO

STATE OF OHIO

Plaintiff - Appellee

-vs-

BENJAMIN KRICHBAUM

Defendant - Appellant

Case No.  2025 CA 00074

Opinion And Judgment Entry

Appeal from the County Court of Common Pleas, Case No. 2025-CR-00286

Judgment:   Affirmed

Date of Judgment Entry:August 11, 2026

BEFORE:   Andrew J. King, Robert G. Montgomery, and Kevin W. Popham, Judges

APPEARANCES: Jenny Wells, Prosecuting Attorney, Kenneth W. Oswalt, Assistant Prosecuting Attorney for Plaintiff-Appellee; April Campbell, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1} Appellant Benjamin Krichbaum ("Krichbaum") appeals his conviction and sentence after a jury trial in the Court of Common Pleas for Licking County, Ohio. For the reasons below, we affirm.

**Facts and Procedural History**

{¶2} On May 15, 2025, Krichbaum was indicted on one count of kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree, and one count of rape by force or threat of force in violation of R.C. 2907.02(A)(2), also a felony of the first degree. The charges

arose from events occurring on April 12 and 13, 2025. The following evidence was presented during Krichbaum's jury trial.

**The Initial Meeting at Flannagan's**

**{¶3}** On April 12, 2025, H.Q. met Krichbaum for the first time at Flannagan's in Dublin, Ohio, where they were part of a group gathered to play sand volleyball. (1Tr. at 22). During the afternoon, members of the group, including H.Q., consumed beer and liquor. (*Id.* at 27).

**{¶4}** H.Q. and Krichbaum engaged in consensual flirtatious conduct that included kissing, Krichbaum picking H.Q. up, and H.Q. sitting on his lap. (1Tr. at 24, 28, 93). Before leaving Flannagan's, the two exchanged telephone numbers. (*Id.* at 28).

**The Group Moves to Robey's Sports Bar**

**{¶5}** Later that evening, H.Q. accompanied Dustin and Alicia Fellure to Robey's Sports Bar in Pataskala, Ohio. (1Tr. at 22). Other members of the Flannagan's group, including the Whartons, were also present. (*Id.* at 31). Krichbaum arrived approximately twenty to thirty minutes after H.Q. (State's Exh. 3).

**{¶6}** Surveillance video from Robey's showed H.Q. approaching Krichbaum at the bar between approximately 11:03 p.m. and 11:05 p.m. The two conversed, and Krichbaum placed his arm around H.Q. in a hug. (1Tr. at 56-58; State's Exh. 3).

**{¶7}** At approximately 11:08 p.m., H.Q. and Krichbaum exited the bar through the rear door and walked to a more private location in the parking lot. H.Q. testified that she left the bar with Krichbaum because she wanted to engage in consensual sexual activity with him. (1Tr. at 36). Once outside, Krichbaum lifted her up and they kissed. (1Tr. at 36, 79). After

discussing where they could have privacy, they walked to Krichbaum's Chevrolet Suburban. (*Id*. at 62).

{¶8} H.Q. willingly entered the second-row seating area of the vehicle with the intention of making out or engaging in sexual activity. (1Tr. at 37-38, 74).

### The Sexual Encounter

{¶9} Once inside the vehicle, H.Q. pulled down her pants while sitting in the second row. (1Tr. at 66). The two removed portions of their clothing and performed oral sex on one another. (1Tr. at 38, 66). According to H.Q., because Krichbaum was unable to achieve an erection, he began digitally penetrating her. (1Tr. at 39).

{¶10} At approximately 11:12 p.m., Alicia Fellure texted H.Q., stating, "I know you're not in the bathroom." (1Tr. at 71). H.Q. responded at 11:18 p.m., "I'll be back soon lol." (*Id*.). Fellure replied, "Better hurry. They are noticing. And Dustin is ready to go home," and later, at approximately 11:25 p.m., sent another message stating, "Bitch hurry up." (1Tr. at 71-72).

{¶11} H.Q. testified that the digital penetration became painful, causing her to tell Krichbaum, in a soft voice, to "stop" because "it hurts." (1Tr. at 39-40, 83). Around the same time, her cellular phone rang. (1Tr. at 39, 68). Although she was initially unable to reach it, she answered when it rang a second time. (1Tr. at 40).

{¶12} After ending the call, H.Q. testified that she grabbed her pants and began getting dressed. According to H.Q., Krichbaum pushed her back down, said, "Not yet," and resumed digitally penetrating her. (1Tr. at 40). H.Q. testified that she repeatedly told him to stop because he was hurting her and attempted to squirm away before he eventually stopped.

(*Id*.). She estimated that the unwanted penetration continued for more than one second but less than thirty seconds. (1Tr. at 84).

{¶13} H.Q. testified that she retrieved her cellular phone from the floor of the vehicle, finished dressing, and returned to Robey's. H.Q. later accompanied the Fellures to their residence, where she told Alicia Fellure that she felt uncomfortable and sore. (1Tr. at 41).

{¶14} Later that evening, H.Q. and Krichbaum exchanged text messages containing sexual innuendo. (1Tr. at 51-53).

**Medical Treatment**

{¶15} The following day, April 13, 2025, H.Q. remained at the Fellures' residence before taking an Uber home. (1Tr. at 102). After noticing bruising, she first sought treatment at an urgent care facility but, after she was unable to be seen there, proceeded to a hospital emergency department. (1Tr. at 43).

**Medical Evidence**

{¶16} Jason Miller, a Sexual Assault Nurse Examiner (SANE) with OhioHealth, examined H.Q. on April 13, 2025. (1Tr. at 110). He prepared a written examination report, which was admitted as State's Exhibit 2. (1Tr. at 111).

{¶17} Nurse Miller documented extensive bruising, swelling, tenderness, and pain to the left side of H.Q.'s vaginal area. (1Tr. at 113-114). He photographed the injuries, which were admitted as State's Exhibit 2A, and documented approximately four inches of bruising and swelling, together with an area of pooled blood or soft tissue injury extending approximately six centimeters above the vaginal opening. (1Tr. at 114-116). Nurse Miller testified that the injuries to H.Q.'s vaginal region were "extensive and severe." (*Id.* at 113). Nurse Miller testified that he had never before seen injuries that extensive in a sexual assault

case. (1Tr. at 113, 114, 116). Nurse Miller testified that H.Q. was in extreme discomfort, crying out in pain and pulling away during the examination. (*Id.* at 117). Nurse Miller testified that H.Q. identified Krichbaum as the individual who caused her injuries. (1Tr. at 117-118).

**The Investigation**

{¶18} Following her hospital examination, H.Q. met with Licking County Detective Shane Rockey on May 1, 2025. (1Tr. at 46, 133).

{¶19} Detective Rockey testified that investigators arranged for H.Q. to participate in a controlled text-message exchange with Krichbaum in an effort to obtain additional information concerning the incident. (1Tr. at 134-135; 2Tr. at 155; State's Exh. 8F).

{¶20} In her initial message, H.Q. asked Krichbaum why he had not stopped when she was begging him to do so. (2Tr. at 156). Krichbaum responded:

> I don't know. Truly disgusted with myself. Hurts my soul I put you thru [sic.] this. I can't give a good answer. It's disgusting and wrong. I hate this with every bit of my being. I don't even know what to say.

(2Tr. at 156).

{¶21} H.Q. then texted:

> Well you obviously heard me say stop. There is no way you didn't hear me. I just want you to know you really hurt me. Did you just lose control of yourself?

(2Tr. at 157).

{¶22} Krichbaum replied:

I must have. I've never hurt anyone or anything ever in my life. I don't even know how I can ever make up for it. With you, myself or anything. I'm at a loss.

(2Tr. at 157).

**{¶23}** Detective Rockey interviewed Krichbaum on May 3, 2025. (2Tr. at 148-149). A recording of that interview was played for the jury. (2Tr. at 157; State's Exh. 1).

**Verdict and Sentence**

**{¶24}** The jury found Krichbaum guilty of both kidnapping and rape. The trial court merged the offenses for purposes of sentencing and imposed an indefinite prison term of a minimum of three years and a potential maximum of four and one-half years on the rape conviction.

**Assignments of Error**

**{¶25}** Krichbaum raises three assignments of error for our consideration,

**{¶26}** "I. THE STATE'S EVIDENCE THAT KRICHBAUM COMMITTED FORCIBLE RAPE WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW."

**{¶27}** "II. KRICHBAUM'S CONVICTION SHOULD BE REVERSED, BECAUSE THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTING KRICHBAUM OF RAPE."

**{¶28}** "III. TRIAL COUNSEL WAS PREJUDICIALLY INEFFECTIVE FOR FAILING TO MOVE FOR KRICHBAUM'S ACQUITTAL."

**I.**

**{¶29}** In his first assignment of error, Krichbaum contends that the evidence is legally insufficient to support his conviction for rape. Specifically, Krichbaum argues that the State

failed to prove beyond a reasonable doubt that he purposely compelled H.Q. to submit by force or threat of force as required by R.C. 2907.02(A)(2).

**Standard of Review— Sufficiency of the Evidence**

**{¶30}** A challenge to the sufficiency of the evidence presents a question of law that we review de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶31}** A conviction will be reversed for insufficient evidence only where reasonable minds could reach but one conclusion — acquittal. *State v. Ketterer*, 2006-Ohio-5283, ¶ 94.

**{¶32}** Before turning to the merits of the sufficiency challenge, we note the two challenged convictions – Kidnapping [Count 1], and Rape [Count 2] - were allied offenses of similar import and merged into the conviction for Rape [Count 2] for purposes of sentencing. Because Krichbaum received no additional sentence for Count 1 Kidnapping, any claimed insufficiency as to that count is harmless as a matter of law. *State v. Cowan*, 2024-Ohio-2028, ¶ 26 (3d Dist.); *State v. Sheldon*, 2019-Ohio-4123, ¶ 11 (3d Dist.); *State v. Kunzer*, 2019-Ohio-2959, ¶ 38 (3d Dist.); *accord State v. Henderson*, 2018-Ohio-5123, ¶ 9 (7th Dist.); *State v. Ramos*, 2016-Ohio-7685, ¶ 14 (8th Dist.); *State v. Smith*, 2009-Ohio-2166, ¶ 27 (10th Dist.); *State v. Mugrage*, 2021-Ohio-4136, ¶ 133 (11th Dist.); *see also State v. Powell*, 49 Ohio St.3d 255, 263 (1990) (merger renders error on merged count harmless beyond a reasonable doubt).

**{¶33}** Accordingly, the sufficiency inquiry properly focuses on the remaining conviction: rape by force or threat of force.

**Governing Law**

**{¶34}** Having narrowed the sufficiency inquiry to the rape conviction, we next determine whether the State presented legally sufficient evidence of force or threat of force.

**{¶35}** R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

**{¶36}** A conviction for rape under R.C. 2907.02(A)(2) requires proof that the offender purposely compelled the victim to submit by force or threat of force.

**{¶37}** The Supreme Court of Ohio has recognized that only minimal force is necessary to satisfy the statutory requirement. *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1988). Whether sufficient force has been used depends upon the age, size, and strength of the parties and their relationship to one another. *Id.* at 58, quoting *State v. Labus*, 102 Ohio St. 26, 38 (1921); *In re N.F.*, 2010-Ohio-2826, ¶ 40 (3d Dist.); *State v. Schmelmer*, 2022-Ohio-57, ¶ 75 (5th Dist.).

**{¶38}** Force may also be established by evidence that the victim's will was overcome by fear or duress. *Eskridge*, 38 Ohio St.3d at 59, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154 (8th Dist. 1985); *In re P.M.S.*, 2026-Ohio-1543, ¶ 22.

**{¶39}** Moreover, "[a] victim need not prove physical resistance to the offender" in a prosecution under R.C. 2907.02. *See* R.C. 2907.02(C). Accordingly, there is no requirement that a victim physically resists in order for a defendant's conduct to constitute force. *State v. Poole*, 2019-Ohio-3366, ¶ 33 (8th Dist.).

**Application**

**{¶40}** Viewing the evidence in a light most favorable to the State, the evidence was sufficient to establish the element of force.

**{¶41}** H.Q. testified that after consensual sexual activity began, Krichbaum's digital penetration became painful, causing her to tell him to "stop" because "it hurts." (1Tr. at 39-40, 83). After answering a telephone call from Alicia Fellure, H.Q. testified that she grabbed her pants and began getting dressed. According to H.Q., Krichbaum then pushed her back down, said, "Not yet," and resumed digitally penetrating her. (1Tr. at 40). H.Q. testified that she repeatedly told him to stop because he was hurting her and attempted to squirm away before he eventually ceased. (*Id*.). She estimated that the unwanted penetration continued for more than one second but less than thirty seconds. (1Tr. at 84).

**{¶42}** If believed, this testimony was sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that Krichbaum purposely used physical force to overcome H.Q.'s withdrawal of consent and compel her to submit to continued sexual conduct. The jury was not required to find that H.Q. physically resisted beyond repeatedly telling Krichbaum to stop or attempting to move away. R.C. 2907.02(C); *Poole*, *supra.*

**Conclusion**

**{¶43}** Construing the evidence most strongly in favor of the State, as we are required to do, we conclude that a rational trier of fact could find beyond a reasonable doubt that Krichbaum purposely compelled H.Q. to submit by force as required by R.C. 2907.02(A)(2).

**{¶44}** Krichbaum's first assignment of error is overruled.

## II.

**{¶45}** In his second assignment of error, Krichbaum argues that his conviction for rape is against the manifest weight of the evidence. Specifically, Krichbaum contends that the evidence more persuasively established that he and H.Q. engaged in consensual sexual activity throughout the encounter.

**Standard of Review— Manifest Weight of the Evidence**

{¶46} A manifest-weight challenge concerns the persuasive force of the evidence. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. The relevant inquiry is whether the greater amount of credible evidence supports one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶47} In conducting a manifest-weight review, an appellate court sits as a "thirteenth juror" and independently reviews the entire record, weighs the evidence and all reasonable inferences, considers witness credibility, and determines whether the jury clearly lost its way and created a manifest miscarriage of justice. *State v. Jordan*, 2023-Ohio-3800, ¶ 17; *Thompkins* at 387.

{¶48} Even so, substantial deference is afforded to the factfinder's credibility determinations. Because the jury personally observes the witnesses' demeanor, voice inflections, and manner of testifying, it is in the best position to evaluate credibility. *Eastley* at ¶ 21; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "An appellate court sits as the thirteenth juror only when evidence contradicts a fact-finder's findings, *see State v. Martin*, 2022-Ohio-4175, ¶ 26, or when a witness's testimony is so inconsistent as to material facts, so impeached, or so fantastical as to make it patently unbelievable." *State v. Reillo,* 2026-Ohio-2701, ¶3. Without conflicting testimony or evidence that completely discredits a witness's testimony the appellate court has nothing to weigh. *Id.*

{¶49} Reversal on manifest-weight grounds is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins* at 387.

{¶50} Additionally, the Ohio Constitution requires the unanimous concurrence of all three appellate judges before a conviction may be reversed as against the manifest weight of

the evidence. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4.

**Application**

{¶51} Krichbaum does not dispute that he and H.Q. voluntarily engaged in sexual activity after leaving Robey's Sports Bar. Rather, he argues that the evidence more persuasively established that H.Q. never withdrew her consent and that the entire encounter remained consensual.

{¶52} The jury, however, heard conflicting evidence on that issue and was required to resolve the parties' competing versions of events. As the trier of fact, the jury was free to believe all, part, or none of any witness's testimony. *State v. Petty*, 2017-Ohio-1062, ¶ 63 (10th Dist.). Moreover, when the evidence permits competing reasonable interpretations, an appellate court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment. *State v. Reillo,* 2026-Ohio-2710, ¶ 28.

{¶53} H.Q. testified that although the encounter began consensually, the digital penetration became painful, causing her to repeatedly tell Krichbaum to stop because he was hurting her. She further testified that after she answered a telephone call and attempted to get dressed, Krichbaum pushed her back down, told her, "Not yet," and continued digitally penetrating her despite her repeated requests that he stop. The jury was entitled to credit that testimony.

{¶54} The jury also heard corroborating evidence supporting H.Q.'s account. Nurse Jason Miller testified that H.Q. sustained extensive bruising, swelling, tenderness, and pain

to her vaginal area, injuries that he characterized as extensive and severe. The jury also viewed photographs documenting those injuries.

**{¶55}** In addition, the jury heard evidence of the controlled text-message exchange between H.Q. and Krichbaum. When H.Q. asked why he did not stop when she was begging him to do so, Krichbaum responded, in part, "I don't know. Truly disgusted with myself. Hurts my soul I put you thru [sic.] this," and later stated, "I must have. I've never hurt anyone or anything ever in my life." The jury was entitled to consider those statements in evaluating whether H.Q.'s account was credible.

**{¶56}** Although Krichbaum argued that the encounter remained consensual and challenged H.Q.'s credibility, credibility determinations are primarily for the jury. The jurors personally observed H.Q.'s testimony, viewed Krichbaum's recorded police interview, heard extensive cross-examination, and considered counsel's competing interpretations of the evidence.

**{¶57}** After independently reviewing the entire record, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice. This is not the exceptional case in which the evidence weighs heavily against conviction. Rather, the record reflects a credibility determination that was well within the jury's province.

**Conclusion**

**{¶58}** Upon independently reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not clearly lose its way or create a manifest miscarriage of justice. The greater weight of the credible evidence supports the conclusion that Krichbaum purposely compelled H.Q. to submit by force in violation of R.C. 2907.02(A)(2).

**{¶59}** Accordingly, Krichbaum's conviction for rape is not against the manifest weight of the evidence.

**{¶60}** Krichbaum's second assignment of error is overruled.

### III.

**{¶61}** In his third assignment of error, Krichbaum contends that he was denied the effective assistance of trial counsel.

**{¶62}** To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation. *Id.* Judicial scrutiny of counsel's performance is highly deferential, and a reviewing court must indulge a strong presumption that counsel's conduct constituted reasonable professional assistance and sound trial strategy. *Id.*

**{¶63}** Second, the defendant must demonstrate prejudice. To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id. See also State v. Harris*, 2024-Ohio-2993, ¶¶ 28-29 (5th Dist.).

**Application**

**{¶64}** Krichbaum argues that trial counsel rendered ineffective assistance by failing to move for a judgment of acquittal pursuant to Crim.R. 29(A).

**{¶65}** The Supreme Court of Ohio has long held that a defendant's failure to make or renew a Crim.R. 29(A) motion during a jury trial does not forfeit a challenge to the sufficiency of the evidence on appeal. *State v. Jones*, 91 Ohio St.3d 335, 346 (2001); *State v. Carter*, 64 Ohio

St.3d 218, 223 (1992). In both cases, the Court explained that a plea of not guilty preserves a defendant's right to challenge the sufficiency of the evidence. Consistent with those decisions, this Court has repeatedly recognized that a Crim.R. 29(A) motion is unnecessary to preserve a sufficiency argument for appellate review. *State v. Henderson*, 2014-Ohio-3121, ¶ 22 (5th Dist.), citing *State v. Straubhaar*, 2009-Ohio-4757, ¶ 40 (5th Dist.); *see also State v. Buckley*, 2017-Ohio-9358, ¶ 46 (5th Dist.).

**{¶66}** Moreover, as discussed in our disposition of Krichbaum's first assignment of error, the State presented sufficient evidence to support the rape conviction. Because the evidence was legally sufficient, any Crim.R. 29(A) motion would properly have been denied. Counsel is not ineffective for failing to make a futile motion. *State v. Ray*, 2025-Ohio-2023, ¶ 64 (5th Dist.).

**{¶67}** Accordingly, Krichbaum cannot establish prejudice under *Strickland*. There is no reasonable probability that the outcome of the trial would have been different had counsel moved for a judgment of acquittal.

**Conclusion**

**{¶68}** Because Krichbaum has failed to establish either deficient performance or resulting prejudice, his claim of ineffective assistance of counsel must fail.

**{¶69}** Krichbaum's third assignment of error is overruled.

{¶70} For the reasons stated in our Opinion, the judgment of the Court of Common Pleas for Licking County, Ohio is affirmed.

{¶71} Costs to be paid by Appellant, Benjamin Krichbaum.


By: Popham, J.

King, P.J. and

Montgomery, J., concur